IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| VIOLA D. CADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11-CV-01109-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Plaintiff Viola D. Cade's Social Security Complaint [Doc. # 1]. For the following reasons, the Court AFFIRMS the decision of the Administrative Law Judge.

**I.     Background**

This case involves a claim for Disability Insurance benefits under Titles II and XVI of the Social Security Act., 42 U.S.C., § 405(g) (1981) and 42 U.S.C § 1383(c)(3) (1976).

Cade filed for disability benefits in July 2009, alleging disability commencing April 23, 2009. Her initial application was denied, and hearings were held before Administrative Law Judge Lynda Sybrant ("ALJ") in November 2010 and February 2011. The ALJ found that Cade was not disabled. Cade requested a review by the Appeals Council, which denied the request. Cade filed an action in this Court for review of the ALJ's decision.

1

### A. Medical Record

On April 29, 2009, Cade came to the Truman Medical Center emergency room complaining of a cough that had lasted three months as well as general fatigue. X-rays revealed multiple lesions in Cade's lungs as well as in her liver, spleen and pelvic bone. A bronchoscopy was performed, which revealed diffusely abnormal granular mucosa throughout the airways on her left side but which came out negative for malignancy. Upon discharge, Cade's treating physician, Dr. Clark, suggested a possible diagnosis of sarcoidosis and recommended a pulmonary clinic follow-up. Pulmonary function tests were normal. In June of 2009, Cade was diagnosed with scarcoidosis, a condition characterized by the growth of clumps of inflammatory cells in different areas of an individual's body. She was started on high-dose prednisone therapy.

Cade saw physicians at the Truman Medical Center twenty-five times over the next year and half for persistent cough, chronic fatigue, shortness of breath, and back and lower leg pain. In July 2009, she was diagnosed with mild degenerative joint disease of the spine. In February 2010, an MRI and EMG confirmed that she had lumbosacral radiculopathy. At this point, the treating physician suggested Cade receive a consult for surgical options or epidural injections, but Cade declined both these options, saying that her pain was "quite tolerable." Over the course of treatment, Cade was prescribed Gabapentin, Prednisone, Neurontin, potassium, Vitamin D, iron supplements, and Vicodin. She reported improvements with medication, although the Prednisone and Gabapentin caused significant side effects such as weight gain and drowsiness. As a result, Cade's treating physicians eventually discontinued Prednisone. Cade also stated

2

she only takes Gabapentin when her pain is severe. The medical record of Cade's treating physicians at Truman Medical notes that Cade reported that Neurontin "has been quite helpful in controlling her pain."

Beginning in March 2010, Cade underwent mental health examinations and treatment for depression, memory impairment, and fatigue. At initial therapy and psychiatric evaluations, Cade was assessed as having moderately severe depression. By November 2010, records of the treating physicians indicate that Cade's depression had improved slightly due to medication and therapy.

Consulting physician Dr. Danushkodi examined Cade in September 2009 for Disability Determination Services ("DDS") and diagnosed sarcoidosis, distal neuropathy, left hip flexor weakness, and myalgias. She determined that Cade had no restrictions in her ability to sit, stand, or walk, but was limited to lifting 5 or 10 pounds from waist level. Another DDS consulting physician, Dr. Trowbridge, reviewed Cade's record in October 2009 and concluded that Cade was limited to work at the sedentary exertional level.

### B. The ALJ's Decision

The ALJ determined that Cade had the severe impairments of sarcoidosis, lower back disorder, and depressive disorder, but found that none of these impairments singly or in combination met or equaled one of the Social Security Administration's listed impairments. 20 C.F.R. § 404.1520(d) (2012); *see also Bowen v. Yuckert*, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291 (1987); *Fastner v. Barnhart*, 324 F.3d 981, 983-84 (8th Cir. 2003). Regarding her depression, the ALJ found that Cade had no significant

3
Case 4:11-cv-01109-NKL   Document 11   Filed 10/09/12   Page 3 of 10

limitations in activities of daily living, mild limitations in social functioning, and mild to moderate limitations in her ability to maintain concentration. The ALJ then conducted a thorough review of the medical record, noting that the progress notes of physicians at Truman Medical indicated that Cade's mental condition improved with treatment and remained stable, and that her sarcoidosis was stable and pulmonary tests unremarkable. The ALJ also relied on the opinion of the pulmonologist, Dr. Houser, who reviewed Cade's record and testified at trial. Dr. Houser expressed the opinion that Cade's condition was stable and her pulmonary function essentially normal. Although he noted that the record established degenerative disc disease of the lumbar spine and depression, he ultimately concluded that Cade had no impairment that met or equaled a listing. He specifically addressed listing 3.02, which involves pulmonary insufficiency.

The ALJ stated that she gave significant weight to the medical opinions in this case, including both Cade's treating physicians at Truman Medical and the consulting physicians and medical expert. She found that no doctor of record had indicated that Cade's limitations precluded all work. She also found that Cade was not entirely credible, on the basis that she is raising four children at home and engages regularly in daily life activities such as shopping, driving, attending church, preparing meals, and doing chores, and that such activity is not consistent with claims of debilitating pain. She also noted that Cade testified that she needed to elevate her legs regularly to relieve pain, but found no evidence of a medical need for this in the record. The ALJ therefore concluded that Cade was capable of work at the sedentary exertional level. Based on the testimony of the vocational expert, the ALJ found that Cade could not engage in her past

work as sales clerk, housecleaner, or restaurant supervisor. He also found sufficient jobs in the national economy that Cade could perform, including surveillance system monitor, document preparer, and addresser.

## II. Discussion

### A. Legal Standard

To establish disability, a claimant must prove that she is unable to engage in substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of 12 months or more. *See* 42 U.S.C. § 423(d). In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision "is supported by substantial evidence in the record as a whole." *Muncy v. Apfel*, 247 F.3d 728, 730 (8th Cir. 2001); *see also Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence" is less than a preponderance, but must be sufficient for a reasonable mind to find it adequate to support the conclusion. *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004); *see also Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The Court must consider evidence that detracts from as well as supports the ALJ's decision. *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998). If the substantial evidence makes it equally possible to form two opposite conclusions, one of which accords with the ALJ's findings, the Court is obligated to affirm the ALJ's decision. *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *see also Finch*, 547 F.3d at 935.

### B. Whether the ALJ Properly Considered the Medical Evidence

In determinations of disability, the treating physician's opinion is given "controlling weight," absent inconsistencies or where supported by "more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1012, 1013 (8th Cir. 2000) (internal quotes omitted); *see also Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Here, the ALJ stated that she gave "significant weight" to the medical opinions in the record, including the opinions of Cade's treating sources at Truman Medical. She found that the opinion of the testifying medical expert, Dr. Houser, was consistent with that of the treating sources, and concluded that no doctor of record had indicated that Cade's limitations precluded all work. This was so even though she found that "the assessments made by the doctors were relatively generous and gave the claimant great deference with regard to her complaints of pain and limitation." Although the record does not indicate that the doctors gave Cade more "deference" than was merited by Cade's subjective reports of pain, the Court does find that the medical record supports the ALJ's determination that Cade is capable of performing sedentary work.

### C. Whether the ALJ Properly Assessed Plaintiff's Credibility

In analyzing a claimant's subjective complaints of pain, the ALJ must take into account "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black*, 143 F.3d at 386 (referencing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)); *see also Finch*, 547 F.3d at 935; *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007).

The ALJ puts significant weight on Cade's ability to perform daily life activities in determining her credibility. The ability to engage in daily life activities, at a reduced pace and within a confined scope, does not necessarily indicate the ability to perform a full-time job in a competitive atmosphere. *Tang v. Apfel*, 205 F.3d 1084, 1086 (8th Cir. 2000) (noting that the court must rather examine "the claimant's ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."). On the other hand, evidence that the claimant engages in significant daily activities can be an indication of work ability. *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (finding that claimant who "cooked, cleaned, did laundry, shopped, studied Russian, and exercised, and… functioned as the primary caretaker for her home and two small children" was capable of working). Subjective complaints may be discounted if they are inconsistent with the record as a whole. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

Cade testified that she becomes easily fatigued and has been trying to "pace" herself by resting in between activities. (TR-45). She also consistently reported fatigue at each doctor's appointment. However, the record indicates that Cade's fatigue did not prevent her from engaging in work-like activities. Her treating physician, Dr. Clark, noted in March 2010 that although Cade "states that she continues to be quite sleepy…, she is able to volunteer[] again and has done so at the methadone maintenance clinic here in town." (TR-493). Cade also began singing in a choir. (TR-447). Additionally, in June 2010, Cade reported that although she still felt fatigued, her symptoms were improved with Prednisone. In August 2010, the treating physician remarked that Cade's

7

fatigue may be due to "some degree of depression and deconditioning." (TR-450). Dr. Clark noted that "I suspect some of this [excessive sleepiness] is related to psychosocial issues," and encouraged Cade to continue with her mental health appointments. (TR-494). There is thus sufficient evidence in the record to support the ALJ's conclusion that Cade's fatigue is not so severe as to prevent her from gainful employment.

The ALJ also found Cade's statement that she needs to prop her leg regularly unsupported by the medical record. The record does indicate that Cade suffers from degenerative joint disease of the lower back, which her treating physicians indicated could be causing her leg pain. (TR-450, TR-424). Cade's statement that "the nurse told me" to prop the leg is not incredible given the evidence in the record. However, Cade's treating physician, Dr. Clark, stated in March 2010 that Cade's legs are "generally feeling better," and that her leg and back pain was improved with medication. Dr. Clark also recommended physical therapy. (TR-493). There is no evidence in the doctors' reports that Cade was told to elevate her legs or that Cade reported decreased pain with leg elevation. Thus, the ALJ's assessment that Cade had no medically-determined need to elevate her legs is supported by the record.

### D. Whether the ALJ Properly Formulated the RFC

Residual Functional Capacity ("RFC") is defined as "the most a claimant can still do despite his or her physical or mental limitations." *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004) (internal quotes omitted). A claimant's RFC is assessed based on the totality of the relevant evidence in the case record, "including medical records, observations of treating physicians and others, and claimant's own descriptions of his or

8

her limitations." *Masterson*, 363 F.3d at 737. This assessment also takes into account the combined effect of both "severe" and "not severe" impairments, as well as the individual claimant's susceptibility to pain. 20 C.F.R. § 404.1545(e).

The ALJ found that Cade had the RFC to perform sedentary work with some limitations caused by her impairments, including no use of pedals or repetitive work with the feet; no ladders, ropes, or scaffolding; occasional stooping, crouching, crawling, kneeling, and climbing; and no concentrated exposure to vibrations. The ALJ did not include the limitations regarding Cade's fatigue or need to periodically elevate her leg. The ALJ is only required to include in her determination evidence of the claimant's condition that she finds credible. *Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 2000). The ALJ's decision to discount Cade's subjective complaints of fatigue and leg pain was supported by evidence in the record, and so these complaints were properly left out of the RFC determination.

The vocational expert determined that a hypothetical person with the above RFC would be able to perform the requirements of such jobs as surveillance system monitor, document preparer, and addresser. A vocational expert's testimony has substantial weight when it is based on an accurate hypothetical. *McKinney v. Apfel*, 228 F.3d 860, 865 (8th Cir. 2000); *see also Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). Because the ALJ's hypothetical was supported by the record, the vocational expert's determination is entitled to substantial weight.

## III. Conclusion

The Court finds that the ALJ's denial of disability benefits to Viola Cade was supported by substantial evidence in the record. Accordingly, the ALJ's decision is AFFIRMED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 9, 2012  
Jefferson City, Missouri